IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VANESSA SMITH and G.C., a minor by and through next friend and parent, VANESSA SMITH,<br><br>Plaintiffs,<br><br>v.<br><br>JAMES MEEKS, TONY SMITH, STEVEN GILFORD, MELINDA LABARRE, CURT BRADSHAW, LULA FORD, CRAIG LINDVAHL, ELIGIO PIMENTEL, JOHN SANDERS, BEATRICE DIAZ-POLLOCK, KATHLEEN FUHRMANN, NAKIA HALL, MAURICE BROWN, KIMBERLY SANDERS, CHRISTIAN ANDERSON, JEANINE GALBRAITH, JENNIFER GASBARRO, MIKE TURAY, NATHALIE CUNNINGHAM, ELLEN BELOTTI, KOKONA CHRISOS, ADAMANTIA LEFTAKIS, KEVIN VAN COTT, KATHRYN BOLSTER, CAROLINE DALY, CELIA ARRESOLA, and NICOLE HRAPEK,<br><br>Defendants. | No. 15 C 10250<br><br>Judge Jorge Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff Vanessa Smith brings this action against numerous employees of the Illinois State Board of Education ("ISBE") and board members and employees of the Crete-Monee Community School District (No. 201-U), claiming that defendants violated her rights and the rights of her son, G.C., by failing to provide him with a free appropriate public education and make accommodations for his disability, as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 701 *et seq.*, 42 U.S.C. § 1983, and Illinois state law. The ISBE defendants and the school district defendants have filed separate motions to dismiss for failure to state a claim under

Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the defendants' motions are granted.

## BACKGROUND

Plaintiff Vanessa Smith is the birth mother of G.C. G.C. resides with his father and attends Crete-Monee Middle School, part of the Crete-Monee Community School District, in University Park, Illinois, as an eighth grader. G.C.'s father has had custody of G.C. since 2009, when the Circuit Court of Cook County awarded him temporary custody of G.C. until further order of the court. Smith, who lives in Chicago, has exercised visitation rights for years, perhaps as far back as 2009, although it is unclear precisely when, how and by what authority she began to exercise them. (*Compare* Diaz-Pollock Order, ECF No. 1, at 78-79 (recognizing that the 2009 state-court custody orders did not explicitly award plaintiff visitation rights, and that no order altered the custody arrangement until 2013), *with* January 3, 2013, Order, ECF No. 43, at 113 (granting plaintiff's motion to "change days of visitation" from Tuesday through Thursday to Friday through Monday)). Pursuant to a state-court order issued on January 3, 2013 (ECF No. 43, at 113), G.C. spent weekends with plaintiff, from 2:30 pm on Friday till 9:00 a.m. on Monday, and lived with his father during the week. In November 2015, the court ordered G.C. to "remain in the care of" his father and that "visitation between [plaintiff] and [G.C.] shall be reserved until further Order of Court," pending a neuropsychological exam of G.C. (*Id.* at 116-17.)

G.C. has a history of behavioral issues at school, and plaintiff alleges that G.C. has been diagnosed with attention deficit hyperactivity disorder, or ADHD. (2d Am. Compl. ¶ 31.)[1] The

---

[1] The precise nature and severity of the disability is unclear. Plaintiff alleges that "G.C. is currently prescribed medication for his disabilities" (2d Am. Compl. ¶ 56), without elaborating, but she also alleges that the March 2014 version of his 504 plan provided that "Doctor has not recommended medication at this time" (*id.* ¶ 204), and she wrote in a June 10, 2015 email that G.C. has never been medically diagnosed with ADHD (ECF No. 43-1, at 92).

school district staff have a plan for accommodating this disability under Section 504 of the Rehabilitation Act, but plaintiff came to believe that the 504 plan was never effectively implemented and that, in any case, it was inadequate because G.C. needs the broader relief of an individualized educational program ("IEP") under the IDEA. The District believed that G.C. would not benefit from additional special education services under an IEP, and it declined to create one for G.C.

On June 17, 2015, purporting to act on behalf of herself and G.C., plaintiff filed an administrative due process complaint and sought a due process hearing before an ISBE impartial hearing officer for review of the District's decision not to create an IEP for G.C. On August 24, 2015, the hearing officer, Beatriz Diaz-Pollock, issued an order in which she explained that plaintiff did not have the right to raise any substantive complaints concerning G.C.'s IEP or lack thereof because she was not G.C.'s custodial parent. Promptly thereafter, on September 1, 2015, plaintiff filed a new due process complaint, this time seeking relief for the District's failure to keep plaintiff informed of all developments related to G.C.'s education and permit her to participate in decisions concerning it.[2]

ISBE impartial hearing officer Kathleen Furhmann presided over a closed hearing held over four days between March 7 and April 4, 2016. On April 18, 2016, she rendered a written opinion, in which she concluded that the District had erred in sending certain information to plaintiff's old mailing address despite the fact that plaintiff had contacted the District to provide her new mailing address, but the error did not cause the loss of any educational opportunity to G.C., in part because his interests were always adequately represented by his father, nor did it

---

[2] The record presently before this Court does not definitively show what G.C.'s father's position was with respect to these administrative actions or with respect to G.C.'s education generally, but some documents in the record suggest that he did not believe a hearing was necessary and did not support plaintiff's efforts. (*See* ECF No. 43-1, at 50, 99.) In any case, he did not formally join in plaintiff's actions complaining of the education G.C. was receiving. (*See* ISBE Defs.' Mot. to Dismiss Ex. A, ECF No. 83, at 47 (internal page 31) n. 45.)

significantly impede plaintiff's opportunity to participate in the educational decision-making process. (ISBE Defs.' Mot. to Dismiss Ex. A, ECF No. 83, at 16-59.) Further, Fuhrmann found that plaintiff had had substantial access to G.C.'s educational records and she was unable to identify records that were withheld from her, so Furhmann concluded that the District had not impeded plaintiff's opportunity to participate in decisions concerning G.C.'s education by restricting access to records. Nevertheless, she ordered the District to send to plaintiff at her current address all notices concerning developments in G.C.'s education, to refrain from restricting plaintiff's access to G.C.'s records, and to submit proof of compliance to the ISBE. Unsatisfied with this resolution of her complaint, plaintiff filed this lawsuit.

## ANALYSIS

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis omitted).

Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility

standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

Plaintiff's complaint consists of eight counts: Count I, violation of the IDEA; Count II, violation of section 504 of the Rehab Act; Count III, violation of the ADA; Count IV, violation of the Illinois School Code; Count V, violation of Illinois School Records Act; Count VI, violation of the Illinois Mental Health and Developmental Disability Confidentiality Act; Count VII, violation of statutory and constitutional rights pursuant to 42 U.S.C. § 1983; and Count VIII, retaliation in violation of section 504 and the IDEA.

There are two motions to dismiss pending before the Court, one filed by the ISBE defendants and one by the District defendants. The District defendants argue that plaintiff lacks standing to bring claims on behalf of G.C. as the noncustodial parent; plaintiff's federal claims must be dismissed for failure to exhaust administrative remedies and failure to state a claim; and the Court should decline to exercise jurisdiction over any remaining state-law claims in the absence of a valid federal claim. The ISBE defendants argue that plaintiff lacks standing; her official capacity claims, other than those brought under the IDEA, violate the Eleventh Amendment; her individual claim against Fuhrmann is barred by the doctrine of quasi-judicial immunity; she fails to state a claim under the IDEA and, to the extent any such claim arises out of the actions of Diaz-Pollock, the claim is time-barred and unexhausted because Diaz-Pollock did not reach the merits in her decision; she fails to state a § 1983 claim against the ISBE defendants because she does not establish their personal involvement or allege disparate treatment or the violation of any fundamental right; and she fails to state a claim for retaliation.

5

## I. THE IDEA AND STANDING

Both groups of defendants begin with the issue of standing. The defendants argue that plaintiff lacks standing to assert claims on behalf of G.C. because she is not an attorney. Further, they argue that she cannot make or challenge substantive decisions concerning G.C.'s education, such as the District's decision not to create an IEP for G.C. or the ISBE's review of that decision, because she is not G.C.'s custodial parent.

In response, plaintiff does not dispute that she is not an attorney, but she argues that she has the right to bring this suit under *Winkelman ex rel. Winkelman v. Parma City School District*, 550 U.S. 516, 533 (2007), in which the Supreme Court held that the IDEA "grants parents independent, enforceable rights" in their children's entitlement to "free appropriate public education" ("FAPE").

Plaintiff is correct that, under *Winkelman*, a parent generally has her own enforceable right to ensure that her child receives a FAPE under the IDEA. However, as the following discussion will show, a parent's rights under the IDEA depend in part on her right to make educational decisions for the child under state law. To determine the scope of plaintiff's rights under the IDEA, the Court will examine the basic framework of the IDEA and its administrative review process, the IDEA definition of "parent," and the scope of plaintiff's legal authority to make educational decisions for G.C. under Illinois law.

### A. IDEA Background

The IDEA is a federal spending statute that assists states in funding education for disabled students if they comply with a number of requirements. The essential requirement is that states provide a FAPE to children with disabilities. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271-72 (3d Cir. 2014) (citing 20 U.S.C. § 1412(a)(1)). The "primary vehicle" for

6

providing a FAPE for children with disabilities is the IEP, which must be set down in a written statement describing the child's current level of performance, how his disability affects his performance, measurable annual goals for the child's educational progress, and the special education services the school will provide in order to achieve those goals. *See S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (citing 20 U.S.C. § 1414(d)(1)(A)). A child with ADHD may qualify as a child with a disability[3] who is eligible to receive an IEP, if his condition adversely affects his educational performance from an academic standpoint. *See generally A.J. v. Bd. of Educ.*, 679 F. Supp. 2d 299, 308-11 (E.D.N.Y. 2010).

In order to receive funds under the IDEA, states must also provide certain procedural safeguards to protect students' rights under the statute. *See* 20 U.S.C. § 1415(a). States must establish an administrative process to "provide parents with an avenue to file a complaint and to participate in an impartial due process hearing with respect to 'any matter relating to the identification, evaluation, or educational placement of the[ir] child, or the provision of a free appropriate public education to such child.'" *Batchelor*, 759 F.3d at 271-72 (citing 20 U.S.C. § 1415(b)(6)(A) (alteration in original)); *see also* 20 U.S.C. § 1415(f)(1)(A). The statutory scheme requires parents to play a "significant role" in the evaluation of a child's need for special education services, and, as explained above, it grants them enforceable rights in the provision of a FAPE to their children. *Winkelman*, 550 U.S. at 524, 533. These rights include the right of parents to obtain judicial review of a school district's actions, if they are unsatisfied with the

---

[3] The IDEA defines a "child with a disability" as "a child with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance . . . , orthopedic impairments, autism, traumatic brain injury, ***other health impairments***, or specific learning disabilities." 20 U.S.C. § 1401(3)(A)(1) (emphasis added). Applicable regulations define "other health impairment" as "having limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to the educational environment, [and] that— (i) Is due to chronic or acute health problems such as asthma, ***attention deficit disorder or attention deficit hyperactivity disorder***, diabetes, epilepsy, a heart condition, hemophilia, lead poisoning, leukemia, nephritis, rheumatic fever, sickle cell anemia, and Tourette syndrome; and (ii) Adversely affects a child's educational performance." 34 C.F.R. § 300.8(c)(9)(i) (emphasis added).

result of the administrative process. *Navin v. Park Ridge Sch. Dist. No. 64*, No. 00 C 2735, 2002 WL 774300, at *3-4 (N.D. Ill. Apr. 29, 2002).

The regulatory definition of "parent" includes "biological" parents, without regard to whether the parent has full or joint custody of the child, *see* 34 C.F.R. § 300.30(a)(1), but not if the "biological" parent "does not have legal authority to make educational decisions for the child," in which case the "parent" is the person who is empowered by "judicial decree or order . . . to make educational decisions on behalf of [the] child," 34 C.F.R. § 300.30(b). The Seventh Circuit has explained that a noncustodial parent may retain certain rights under the IDEA, depending on the nature of the custody arrangement as defined by state law and any applicable judicial orders. *See Navin v. Park Ridge Sch. Dist. 64*, 270 F.3d 1147, 1149 (7th Cir. 2001) (noncustodial divorced parent retained right to inspect records and discuss child's educational progress with school teachers and staff based on terms of divorce decree). However, to the extent that the applicable state law gives the custodial parent the right to make educational decisions, the noncustodial parent may not use the IDEA administrative process to "upset choices committed to" the custodial parent by state law or to challenge an educational decision in any way that is incompatible with the custodial parent's exercise of his rights under the IDEA. *See id.* at 1149-50.

B.  **IDEA Implications of G.C.'s Custody Status Under State Law**

In this case, the record shows that G.C.'s father has had custody of G.C. since 2009, when the Circuit Court of Cook County granted him temporary custody pending further order of the court, granted him an abatement of child support, and struck plaintiff's motion for joint custody. (*See* Diaz-Pollock Order, ECF No. 1, at 78-79.) The record does not show whether the state court ever entered an order either making this arrangement permanent or altering it until

8

2013. (*Id.* at 79.) On January 3, 2013, after plaintiff moved to change her "days of visitation," the Circuit Court of Cook County granted plaintiff "visitation/custody" of G.C. on weekends, and further ordered that "visitation as occurring [at] all other times shall remain under the mutual agreement of the parties, until further order of court." (Exhibits, ECF No. 43-1, at 62.)

In her order dismissing plaintiff's administrative complaint for lack of standing, Diaz-Pollock recognized that the relevant orders of the Circuit Court of Cook County do not clearly and precisely define the parenting arrangement at issue, sometimes confusingly using terms like "visitation" and "custody" interchangeably, and they "never expressly outlin[e] the scope of each parent's decision-making authority vis-à-vis each other." (Diaz-Pollock Order, ECF No. 1, at 80.) Nevertheless, she concluded that G.C.'s father clearly had educational decision-making authority because he had custody of G.C.—and therefore the legal authority to make decisions related to G.C.'s upbringing—"at all times relevant to [G.C.'s] school attendance."[4] Although plaintiff retained her parental right to obtain access to educational records, she lacked educational decision-making authority and therefore lacked standing to bring a due process complaint under the IDEA administrative process, according to Diaz-Pollock.

In her April 18, 2016 order, Fuhrmann reached the same conclusion, although she reasoned differently. Fuhrmann explained that the relevant orders of the Circuit Court of Cook County demonstrate that G.C.'s father is the custodial parent; plaintiff merely has "visitation"

---

[4] The Court notes that Diaz-Pollock's reasoning on this point may have been suspect to the extent it was based on the fact that G.C.'s father had custody of G.C. on weekdays and plaintiff had custody or visitation rights only on weekends. Diaz-Pollock did not cite, and the Court is unaware of, any authority for the principle that the parent who has custody of the child during school days is entrusted with all educational decision-making. This questionable reasoning did not prejudice plaintiff, however, because it did not lead to the wrong result, as subsequent orders showed. The November 2015 state-court order, which the Circuit Court of Cook County issued after Diaz-Pollock rendered her decision, shed some additional light on the custody arrangement, and as the Court will discuss in more detail below, Fuhrmann persuasively reasoned that G.C.'s father, not plaintiff, had educational decision-making authority because the Circuit Court of Cook County gave him custody of G.C., and the plain language of the relevant statutes provides that the custodial parent has educational decision-making authority unless a court order provides otherwise—as in *Navin*, where the divorce decree explicitly gave the noncustodial parent rights with respect to the oversight of the children's education.

rights (and even those were "reserved" or suspended by the November 2015 order). (ECF No. 83, at 37.) *See* 750 ILCS 45/14(a) ("If a judgment of parentage contains no explicit award of custody, the establishment of a support obligation or of visitation rights in one parent shall be considered a judgment granting custody to the other parent."), 750 ILCS 5/607(a) ("A parent not granted custody of the child is entitled to reasonable visitation rights.").[5] Under Illinois law, it is the custodial parent who has the right to make educational decisions, if no court order allocates decision-making authority differently. *See* 750 ILCS 5/608(a) ("Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, ***the custodian may determine the child's upbringing, including*** but not limited to, ***his education***, health care and religious training.").[6] Plaintiff insists, without explanation or citation to any order in her state-court case or any other legal authority, that she always had joint custody of G.C., but the record is to the contrary. Although the custody orders could have been more precise about the parents' respective rights, it is at least clear, in light of all the state-court custody orders and their statutory backdrop, that plaintiff merely had visitation rights, and it was G.C.'s father who had custody of G.C. and the educational decision-making authority that accompanies it.

---

[5] These provisions, along with the below-cited 750 ILCS 5/608, have been repealed and replaced, effective January 1, 2016, as part of the Illinois legislature's revamp of the Illinois Marriage and Dissolution of Marriage Act and replacement of the Illinois Parentage Act of 1984 with the Illinois Parentage Act of 2015. The language of the updated statutes does not appear to make any substantive change that would significantly alter the hearing officers' or this Court's analysis of the state-court orders bearing on custody of G.C. *See* 750 ILCS 46/802(c); 750 ILCS 5/602.5; 750 ILCS 5/602.8; *see also* 750 ILCS 5/801 ("It is not the intent of the General Assembly to modify or change the rights arising under any order entered concerning custody or visitation prior to the effective date of this amendatory Act of the 99th General Assembly.").

[6] Act 5 of Chapter 750 of the Illinois Compiled Statutes is the Illinois Marriage and Dissolution of Marriage Act, which may not seem to apply directly in this case because plaintiff alleges that she and G.C.'s father were never married and never cohabitated. However, Illinois courts have interpreted the provisions of the Marriage and Dissolution of Marriage Act in harmony with the Parentage Act. *See, e.g., Rawles v. Hartman*, 527 N.E.2d 680, 682 (Ill. App. Ct. 1988) (holding that a provision of the Dissolution Act was applicable in a parentage proceeding because "[a] basic rule of statutory construction is that parts of a comprehensive statutory scheme should be read *in pari materia* in order to ascertain the legislature's intent and to avoid injustice. Statutory provisions related to the same subject matter should be construed harmoniously where possible. . . . Where two acts *in pari materia* are construed together and one of them contains provisions omitted from the other, the omitted provision will be applied in a proceeding under the act not containing such provisions, where not inconsistent with the purpose of the act.")

Under such circumstances, the noncustodial parent lacks standing under the IDEA to demand a hearing on the appropriateness of a school district's IEP evaluation or the provision of a FAPE. *Cf. Fuentes v. Bd. of Educ. of City of N.Y.*, 569 F.3d 46, 46-47 (2d Cir. 2009). In *Fuentes*, the Second Circuit explained that, where the applicable state-court orders did not explicitly provide the noncustodial parent with educational decision-making authority, the noncustodial parent had no right to control educational decisions under New York law (and the above discussion shows that Illinois law is no different), so he had no right to a due process hearing concerning the special education services the school district provided to his son pursuant to the IDEA. *Id.*; *see also Navin*, 270 F.3d at 1149-50. This case is indistinguishable from *Fuentes*, and the Court is persuaded by its reasoning.

The defendants do not dispute that plaintiff, as a biological parent with visitation rights, retains the right to access records and receive notices from the District so that she may participate in educational decisions. If she has those rights, then she has standing to assert her own claims for violations of those rights, as she did before hearing officer Fuhrmann. However, the Court agrees with Fuhrmann's analysis and with her conclusion that, under Illinois law, plaintiff has no standing to mount a substantive challenge to the manner in which the District provided special education services to G.C. or its decision not to provide certain such services under the IDEA. To the extent plaintiff's IDEA claim is premised on the District's substantive decision not to create an IEP for G.C. or its provision of a FAPE, the claim is dismissed.

## II. EXHAUSTION

The IDEA does not preclude other federal causes of action, but the IDEA does contain a broad exhaustion provision that encompasses even non-IDEA federal claims:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with

> Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C.A. § 1415(l). Thus, if the IDEA offers relief for a plaintiff's injury, then the plaintiff must exhaust her remedies pursuant to the IDEA administrative process, not only in order to assert IDEA claims but also to assert claims under other statutes such as the ADA or the Rehab Act. The Seventh Circuit has explained that the IDEA's exhaustion provision applies to claims that are based on "acts that have both an educational source and an adverse educational consequence." *See Charlie F. ex rel. Neil F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 993 (7th Cir. 1996) ("Both the genesis and the manifestations of the problem are educational; the IDEA offers comprehensive educational solutions; we conclude, therefore, that at least in principle relief is available under the IDEA [and the IDEA exhaustion provision applies to plaintiff's ADA, Rehab Act and § 1983 claims.]").

The only claim that plaintiff has exhausted in this case is the procedural IDEA claim concerning access to records and notice of educational decisions that she litigated before Fuhrmann. To the extent she raises a substantive IDEA claim based on the provision of a FAPE to G.C., it has not been exhausted because neither Diaz-Pollock nor Fuhrmann reached the merits of any such claim. *See L.M. ex rel. Mauser v. Brownsburg Cmty. Sch. Corp.*, 28 F. Supp. 2d 1107, 1111 (S.D. Ind. 1998). Both impartial hearing officers concluded that they could not reach the merits of any substantive IDEA claim plaintiff raised concerning whether the District

provided G.C. with a FAPE because plaintiff has no standing to raise any such claim. As the Court explained above, the Court finds no error in this conclusion.[7]

In asserting her non-IDEA federal claims under the ADA, Rehab Act, and § 1983, plaintiff alleges that G.C. did not receive appropriate evaluation and testing to accommodate his disability, he suffered discrimination with respect to the educational services the District provided to accommodate his disability or the lack thereof, and the District took action in retaliation for plaintiff's complaints about the District's alleged failure to accommodate G.C.'s disability. These claims are all based on "acts that have both an educational source and an adverse educational consequence," or, stated differently, a "problem" both the "genesis and manifestations" of which are "educational." *See Charlie F.*, 98 F.3d at 993. Because all of these claims are rooted in the educational services the District provided to G.C., plaintiff was required to exhaust them via the IDEA administrative process. *See Brown v. Dist. 299—Chicago Pub. Sch.*, 762 F. Supp. 2d 1076, 1084-86 (N.D. Ill. 2010); *Loch v. Bd. of Educ. of Edwardsville Cmty. Sch. Dist. No. 7*, 573 F. Supp. 2d 1072, 1080-82 (S.D. Ill. 2008); *Renguette v. Bd. of Sch. Trustees ex rel. Brownsburg Cmty. Sch. Corp.*, 540 F. Supp. 2d 1036, 1043-45 (S.D. Ind. 2008); *see also Batchelor*, 759 F.3d at 273-74; *J.Q. v. Washington Twp. Sch. Dist.*, 92 F. Supp. 3d 241, 246-48, 250-51 (D.N.J. 2015). Because plaintiff failed to do so, these claims are dismissed.

## III. IDEA NOTICE AND ACCESS TO RECORDS CLAIM

The remaining properly-exhausted federal claim in this suit is plaintiff's IDEA claim concerning the District's failure to provide plaintiff with notice of educational decisions and access to G.C.'s educational records. Because plaintiff does not have standing to bring a

---

[7] Indeed, to the extent that G.C.'s father is satisfied with the education G.C. is receiving, this case illustrates the problem the Seventh Circuit described in *Navin*, in which the court explained that a noncustodial parent may exercise her own rights under the IDEA, to the extent she has any under state law, but she may not undermine and interfere with the educational decision-making of the custodial parent. 270 F.3d at 1149-50.

13

substantive claim against the District for providing G.C. with inadequate educational services amounting to the denial of a FAPE, she is limited to seeking relief for procedural violations of her notice and records-access rights. However, "a plaintiff alleging only that a school district has failed to comply with a procedural requirement of the IDEA . . . may only seek injunctive relief for prospective compliance." *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010). Plaintiff has already been granted this relief; Fuhrmann ordered the District to provide plaintiff with IDEA notices at her current address and to refrain from restricting her access to G.C.'s educational records. Based on Fuhrmann's written order and the allegations of the complaint, it appears that the District has acceded to plaintiff's requests concerning notices and records. Although plaintiff complains bitterly of the manner in which Fuhrmann conducted the hearing, the result of the hearing was that Fuhrmann granted plaintiff all the relief that was available to her for the procedural violations she raised. Because she has already been granted the only relief she has standing to seek under the IDEA, plaintiff fails to state a plausible claim for relief in this action.

In their briefs, the defendants raise and discuss a number of other pleading defects in plaintiff's federal claims, but the Court need not address these matters because the foregoing discussion is sufficient to resolve the present motions. Plaintiff's federal claims, including her IDEA claim, are dismissed. The dismissal must be with prejudice because, as the foregoing discussion shows, plaintiff cannot state a claim both that she has standing to raise and for which any relief is available.

## IV. STATE LAW CLAIMS

Plaintiff raises claims under a number of Illinois statutes: the Illinois School Code, the Illinois School Records Act, and the Illinois Mental Health and Developmental Disabilities

14

Confidentiality Act. The Illinois School Code and Illinois School Records claims appear to duplicate her federal claims, and the District argues that none of these statutes provides plaintiff with a private right of action to exercise on behalf of G.C. in any case. The Court has some doubt about this argument, *see* 105 ILCS 5/14-8.02a(i), 740 ILCS 110/15, but regardless of whether there is a private right of action under these statutes, the Court declines to exercise jurisdiction over the remaining state-law claims because it has dismissed all federal claims in this suit. Plaintiff's state law claims are dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motions to dismiss [74] and [83] are granted. The federal claims (Counts I-III, VII-VIII) are dismissed with prejudice. The state claims (Counts IV-VI) are dismissed without prejudice. Civil case terminated.

**SO ORDERED.**

ENTERED: December 5, 2016

**HON. JORGE L. ALONSO**
**United States District Judge**